IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

BOBBY BLAND, et al.

      Plaintiffs,

v.

B.J. ROBERTS, individually and in his official     CASE NO. 4:11-CV-45
capacity as Sheriff of the City of Hampton,
Virginia

      Defendant.

## DECLARATION

I, Robert W. McCoy, having direct knowledge of the information set forth herein, hereby depose and declare as follows:

1. I am a citizen and resident of the Commonwealth of Virginia and the United States. I maintain my principal residence at 5 Clover Street, Hampton, Virginia 23666.

2. From August, 1988 until December, 2009, I was employed as a Deputy Sheriff within the Hampton Sheriff's Office under B.J. Roberts. I served as a sworn, uniformed Deputy Sheriff. I served as a jailor since 2006. I had no role in making policy for the Hampton Sheriff's Office. My contact with the public was relatively limited. My leadership responsibilities were very limited. I was not a confidant of the Sheriff or a custodian of any confidential information.

3. I have never served as a "law enforcement officer." I never attended the "Basic Law Enforcement" course required by DCJS in order to serve in that capacity. I served in the Hampton Sheriff's Office as a jailor. My only formal training for the job was the "Basic Jailor" course offered by DCJS. I did not exercise any power of arrest. I was not aware I had the power

**Exhibit 8**

of arrest while I was employed by the Hampton Sheriff's Office and was under the general impression that I did not.

4. My shift supervisor at the time of my termination was Lieutenant Crystal Cooke.

5. At all times during my employment as a Deputy in the Hampton Sheriff's Office, I performed in an exemplary manner. I always received "above average" performance evaluations.

6. In November 2009, Sheriff Roberts was up for re-election for the office of Sheriff of the City of Hampton.

7. I observed Sheriff Roberts use the resources and manpower of his office on several different occasions in support of his campaign events and re-election efforts.

8. In the late summer of 2009, Sheriff Roberts learned that I was actively supporting Jim Adams, his primary opponent in the upcoming election. Adams was generally considered to be a credible opponent as he had held a very high-ranking position in the Hampton Sheriff's Office for sixteen years and resigned his position in January 2009 to run against Roberts. At the time of his resignation, Adams was the Lieutenant Colonel within the office and third most senior officer.

9. In late August of 2009, I attended a cookout for Hampton Sheriff's Office employees. Danny Carter invited Jim Adams to attend the cookout. This caused an incredible buzz at the office when we returned to work the following Monday. In addition to Carter, John Sandhofer also attended the cookout. Photographs of the event were posted on Facebook. Major Richardson, Colonel Bowden and Sheriff Roberts himself immediately concluded that this was a Jim Adams campaign event. I learned from Ramona Larkin that Major Richardson had come and talked to her about it. At this point, I became scared and went to Major Richardson, told him

of my attendance at the cookout, but tried to persuade him that I was not there to support Adams. I did this because I was genuinely concerned I would be fired at that time. The fact of the matter is that I did support Adams although the event was not an Adams event.

10. Prior to the cookout discussed above, I went on Jim Adams' campaign Facebook page and posted an entry on the page indicating my support for his campaign. My posting became well-known within the office and I subsequently took it down.

11. During the 2009 campaign season, I affirmatively expressed my support for Adams to several persons. I did not do this at work. I was never disruptive at work or disrespectful to Sheriff Roberts.

12. In years prior to 2009, I provided significant support to Sheriff Roberts' re-election efforts in various ways. I put up yard signs, handed out fliers, worked the polls on Election Day, bought tickets to campaign events, attended campaign events, and did many other things as well. I was energetic and enthusiastic in my support. In 2009, I did none of these things. Many of us, including the plaintiffs and myself, felt very close to Jim Adams. He had been our supervisor for sixteen years. Many of us had a general and strong belief in him as a leader and were incapable of working against him in 2009.

13. Major Richardson was in charge of selling tickets to the Sheriff's barbecue and golf tournament. He would frequently tell employees, "you either sell the tickets or you buy them." I have heard him say this on several occasions.

14. I have heard Sheriff Roberts' senior officers make the following statements to low-level Hampton Sheriff's Office employees on many occasions:

    a) "If you don't support the Sheriff, you are not going anywhere" (Capt. Edward Hardy, Lt. Sharon Mays, Sgt. Theodore Ford);

3

      b)    "Be sure you are supporting the right person" (Capt. Hardy);

      c)    "It is in your best interest to support the sheriff" (Capt. Hardy).

15.    In addition to my own Facebook posting on Jim Adams' campaign Facebook site, I observed Plaintiff Danny Carter's Facebook posting on Jim Adams' site sometime in the late summer or very early fall of 2009.

16.    In the late summer of 2009, Sheriff Roberts became upset when he learned that Carter and I had noted our support for Jim Adams' campaign on his Facebook page. The Sheriff gave talks to all of the shift changes. He expressed his awareness of certain employees [obviously I was one] being on Jim Adams' campaign Facebook page. He said essentially that he would have the job as long as he wanted and that if we openly supported his opponent, our careers would be over with his office. He made a statement that essentially communicated the following, these are close to his exact words:

> I am going to have this job as long as I want it. My train is the long train. I will be Sheriff until I don't want to be Sheriff. If you want to get on the short train with the man I fed for sixteen years, you are going to be out of here. This is a bad economy and people are knocking down my door for these jobs.

17.    I was terminated shortly after the election.

18.    I always received "above average" or "outstanding" evaluations and at no time prior to my termination in 2009 did my immediate supervisor or second-level supervisor indicate that they had any problems with my performance.

4

I declare under penalty of perjury that the foregoing is true and correct.

12-21-11
_____
Date

_____
ROBERT W. MCCOY