UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

BOBBY BLAND, DANIEL RAY
CARTER, JR., DAVID W. DIXON,
ROBERT W. MCCOY, JOHN C.
SANDHOFER and DEBRA H.
WOODWARD,

    Plaintiffs,

v.

B. J. ROBERTS, individually and
in his official capacity as Sheriff
of the City of Hampton, Virginia,

    Defendant.

CASE NO: 4:11cv45

## REPLY TO PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Defendant, B.J. Roberts, Sheriff of the City of Hampton ("Sheriff Roberts"), by counsel, hereby replies to plaintiffs' opposition to his Motion for Summary Judgment. Plaintiffs have failed to establish any dispute as to material facts.

**I.    Introduction**

Under Virginia law, sheriffs' deputies serve at the will of the sheriff and have no property interest in continued employment. See Va. Code § 15.1-48; *Jenkins v. Weatherholtz*, 719 F. Supp. 468 (W.D.Va. 1989). However, a sheriff may not refuse to hire a person in retaliation for constitutionally protected political expression or for political association. See *Harris v. Wood*, 888 F. Supp. 747, 751 (W.D. 1995), aff'd, 89 F.3d 828 (4th Cir. 1996). Here, plaintiffs fail to establish a material issue of fact in dispute sufficient to maintain their First Amendment claims. Accordingly, Sheriff

Roberts is entitled to summary judgment on plaintiffs' First Amendment claims as a matter of law. Furthermore, the established law in the Fourth Circuit would not have alerted Sheriff Roberts that his actions were improper and, therefore, he is entitled to qualified immunity.

### A. Plaintiffs First Amendment Expression Claims Fail

Plaintiffs first argue that "it is clear that Deputies Carter, Dixon, McCoy and Woodward made affirmative expressions of political support for Jim Adams that are protected under the First Amendment." Plaintiffs, however, fail to put forth any evidence to establish any affirmative speech which would be protected and fail to address, much less put forth any disputed facts to satisfy the three-prong test set forth in *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998). In fact, plaintiffs cite no case law whatsoever in their Argument.

#### (1) Carter's and McCoy's Facebook Posts are not Constitutionally Protected Speech.

Carter and McCoy apparently claim that their Facebook posts were a matter of public concern that entitles them to constitutional protection. Carter and McCoy are wrong. Their action of simply adding their names to Adams' Facebook page is not sufficient evidence of constitutionally protected expression.

The only evidence presented by the plaintiffs is that Carter became a "friend" of Adams on Facebook. Carter merely clicked a button on the Facebook page that he wished to be a "friend" of Carter. His name then appeared on the Facebook page as a "friend" of Adams. See Exhibit 6B to Plt.'s Motion in Opposition.

The only evidence presented by McCoy is that he went on Jim Adams' Facebook page and "posted an entry on the page indicating his support for his campaign."

2

Nowhere has the printout of the page been produced. Thus, we can only assume McCoy took the same action Carter did and became a "friend" of Adams, meaning his name appeared on the Facebook page as a "friend" of Adams. There is no evidence of McCoy posting any message or anything that could be considered "speech". See Exhibit 8 to Plt.'s Motion in Opposition.

Carter's and McCoy's action of simply adding their names to Adams' Facebook page is not sufficient evidence of constitutionally protected expression. There is no "speech". The posts simply do not touch on a matter of public concern and do not warrant First Amendment protection.

A matter of public concern is a matter of political, social or other concern to the community. *Kirby v. City of Elizabeth City,* 388 F.3d 440, 446 (4th Cir.2004). In order to determine if speech is about a matter of public concern, one must examine the content, form and context of the speech. *Id.* It is not enough that the topic of the speech is one in which the public might have an interest. *Olivo v. Mapp,* 57 F.3 1067, 1070 (4th Cir. 1995)(citation omitted). The court must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests. *Id.* (citation omitted).

Facebook is a forum for personal messages. Carter's and McCoy's intended audience was Adams' Facebook friends, not the public. A message posted on Facebook by a member is viewed by friends only, not the world at large. Facebook contains many pages devoted to protesting about issues of public concern or attempting to raise awareness about issues of public concern. Carter's and McCoy's becoming a "friend" of Adams, however, was in the form of a private message to a virtual community of friends tied together by a mutual desire to share information only

3

among themselves. The public has no interest in Carter's and McCoy's becoming a "friend" of Adams, and their posts did not otherwise attempt to bring something into the public eye that mattered from a constitutional standpoint. Carter and McCoy cannot seriously claim they intended their posts to address a matter of public concern because the posts fail to convey any message at all. Nothing about the posts speak to a political or social issue. The posts, at best, are a personal message to a friend. Thus, Carter's and McCoy's Facebook posts do not rise to the level, in any respect, of speech on a matter of public concern. Having failed to establish that they engaged in any protected speech, Carter's and McCoy's retaliation claim fails and Sheriff Roberts is entitled to summary judgment.

If by some stretch of the imagination one were to consider Carter's and McCoy's Facebook posts to be a matter of public concern, Sheriff Roberts would nonetheless be entitled to qualified immunity in this case because no reasonable person would know that such ambiguous and vague statements on Facebook would constitute a matter of public concern. See Section C below.

### (2) Dixon's Statement is not Constitutionally Protected Speech

Dixon apparently claims that one statement he made to a poll worker ("you can throw this f*****g s**t away") is somehow a matter of public concern that entitles him to constitutional protection. Dixon is wrong. This statement is not protected speech.

Dixon cannot argue that the purpose of his statement was to raise an issue of public concern. The statement merely furthered his personal view. His statement fails to convey any message at all. Nothing about the statement addresses a political or

social issue. Having failed to establish that he engaged in any protected speech, Dixon's retaliation claim fails and Sheriff Roberts is entitled to summary judgment.

### (3) Woodward's Conduct is not Constitutionally protected Speech

Woodward apparently claims that her protest of a fellow deputy's circulating a petition in support of Sheriff Roberts is somehow a matter of public concern that entitles her to constitutional protection. Woodward is wrong. This statement is not protected speech.

This is the first time this claim has ever been mentioned. Woodward was deposed on August 23, 2011. During the deposition, she was specifically asked about her First Amendment claim. Counsel for Sheriff Roberts asked:

> Q. You allege in this lawsuit that Sheriff Roberts violated your First Amendment rights to free speech. How did he do that?
>
> A. Well, I feel like I was not able to express myself or my -- feelings or who I wanted to support, I mean, in --
>
> Q. Well, you still voted for the candidate of your choice, didn't you?
>
> A. Yes.
>
> * * * * * * *
>
> Q. Now, you never expressed opposition to Sheriff Roberts to anyone at the sheriff's department, did you?
>
> A. Expressed opposition?
>
> Q. Or say anything derogatory about Sheriff Roberts to the senior staff at the Sheriff's department, did you?
>
> A. No.

See Woodward Depo., p.33 and 38, attached hereto as Exhibit 1.

The first time Woodward came up with her alleged Petition protest was three months later when the plaintiff filed her Opposition to Defendant's Motion for

5

Summary Judgment. Thus, it is clear that the claim regarding the Petition was crafted in an attempt to get by summary judgment.[1]

More importantly, nowhere in the plaintiffs' presentation of evidence, including Woodward's Declaration, does it appear to connect Sheriff Roberts to Woodward's actions. The plaintiff merely claims that because Woodward protested in the same building as where Sheriff Roberts works, one can "infer" Sheriff Roberts knew and took some action against Woodward. This is ridiculous. Having failed to establish that she engaged in any protected speech, Woodward's retaliation claim fails and Sheriff Roberts is entitled to summary judgment.

### (4) Bland

Counsel for the plaintiffs has conceded that Bland has no First Amendment expression claim. See Plt.'s Memorandum in Opposition, Page 23, ¶24.

### (5) Sandhofer

Counsel for the plaintiffs has conceded that Sandhofer has no First Amendment expression claim. He has presented no facts to support any inference that Sandhofer made any expression whatsoever. See Plt.'s Memorandum in Opposition, Page 25, ¶35-40. There is also no argument made to support such a claim. See Plt.'s Memorandum in Opposition, Page 30 ("Four of the Deputies engaged in...).

---

[1] Woodward also claims that she was never offered the opportunity to become a Deputy. This too is completely opposite of what she testified to during deposition. She testified:
```
Q.    Were you offered a position as a deputy?
A.    He at one point said something about sending me to the academy.
Q.    And you declined?
A.    Yes.
```
See Woodward Depo., p.28-29, attached hereto as Exhibit 1.

6

### (6) Plaintiffs Cannot Establish That Their Interest Outweighed Sheriff Roberts' Interest

Even assuming *arguendo* that plaintiffs did make some constitutionally protected speech, they cannot satisfy the second *McVey* criteria. Importantly, plaintiffs chose in their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 29) not to address the second *McVey* criteria. Plaintiffs failed to address the issue because they cannot sustain their burden to produce some sworn evidence which would establish that their interest outweighed Sheriff Roberts' interests. Thus, there is no dispute that Sheriff Roberts' "'interest in providing effective and efficient services to the public,'" outweighs any of the plaintiffs' alleged speech. *Ridpath v. Board of Governors of Marshall Univ.*, 447 F.3d 292, 316 (citation omitted).

### (7) Plaintiffs Cannot Establish a Causal Nexus

Even assuming *arguendo* that plaintiffs did make some constitutionally protected speech, they cannot satisfy the third *McVey* criteria. *McVey* requires that, "there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action." *Ridpath*, 447 F.3d at 316. Importantly, plaintiffs chose in their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 29) not to address the third *McVey* criteria. Plaintiffs failed to address the issue because they cannot sustain their burden to produce some sworn evidence which would establish a causal nexus. Thus, it is clear that the alleged protected speech was not the "but for" cause of the adverse employment action. *Ridpath*, 447 F.3d at 318 (citing *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990)).

### B. Plaintiffs First Amendment Association Claims Fail

Plaintiffs fail to establish a material issue of fact in dispute sufficient to maintain a First Amendment association claim.

### (1) Plaintiffs Admit They Kept Their Support of Adams Secret.

There is no evidence in the record suggesting that plaintiffs' political association was a motivating or substantial factor of any employment decisions made by Sheriff Roberts. In fact, plaintiffs never even address in their Memorandum of Law the fact that all plaintiffs' admit they kept their support of Adams secret. The plaintiffs admit that:

- they kept their support for Adams "secret" (Bland, Woodward, and Sandhofer) or "private" (Dixon)

- they only told a friend or friends at work they could "trust not to disclose," (Bland and Dixon)

- they "believe" Sheriff Roberts saw an Adams bumper sticker (Dixon)

- they "believe" Sheriff Roberts saw a girlfriend's Adams' bumper sticker and stared at the girlfriend at the polls (Sandhofer)

- they "just assumed he knew" (McCoy)

- they believe "maybe [the Sheriff] thought I was going to oppose him" (Bland)

- they remained "neutral" (Woodward)

A mistaken "belief" or "assumption" of protected activity is not actionable. Importantly, plaintiffs fail to offer any sworn testimony showing Sheriff Roberts either knew whom plaintiffs supported or made his reappointment decisions on that basis. The plaintiffs bear the burden of producing some evidence, but have failed to sustain it. Accordingly, plaintiffs' claims fail as a matter of law.

### (2) Plaintiffs Have Provided No Evidence that Sheriff Roberts Either Knew Whom Plaintiffs Supported or Made His Reappointment Decisions on that Basis.

Plaintiffs contend that "The Sheriff obviously held retaliatory and politically motivated animus." The plaintiffs, however, have provided no evidence to support that claim. Instead, plaintiffs have offered merely rumor, innuendo and speculation based on the following facts: the fact that "Carter, McCoy and Sandhofer attended the cookout";[2] the fact that "all of plaintiffs were close to Jim Adams"; and the fact that "all of plaintiffs had, prior to 2009 ... support[ed] Sheriff Roberts's re-election efforts".[3] See Plt.'s Memorandum in Opposition, p.31. To rely on such testimony to conclude that Sheriff Roberts decided not to re-appoint the plaintiffs would be pure speculation. "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

In addition, and most importantly, all of the plaintiffs took steps to support Sheriff Roberts. Thus, there is no way Sheriff Roberts would have known who the plaintiffs' supported.

### (i) Carter

Carter testified during his deposition that Sheriff Roberts was invited to the August 29, 2009 cookout. He attended the debates. See Carter Depo, p. 48 and 63, attached as Exhibit 2.

---

[2] It is undisputed that the cookout was a birthday party to which Ms. Larkins invited her entire shift. Many people from the Sheriff's Office attended. Adams did not campaign. Sheriff Roberts learned about the party after it happened and that Adams attended, but did not know who else was there and did not look at pictures of that event. Many deputies who attended the birthday party were reappointed by Sheriff Roberts, including Deputies Ferguson, Blizzard, Rawles, Larkins, and others. See Defendant's Memorandum in Support of Motion for Summary Judgment, p. 5-6, ¶ 11, and supporting Exhibits.

[3] The plaintiffs provided support for Sheriff Roberts. See pages 9-10 and supporting Exhibits herein.

### (ii) McCoy

McCoy testified during his deposition that he purchased tickets to the golf tournament. McCoy also supported Sheriff Roberts' 2009 re-election campaign by putting up sheets on doors. See McCoy Depo., p.34 and 37, attached hereto as Exhibit 3.

### (iii) Woodward

Woodward testified during her deposition that she purchased tickets to the golf tournament. See Woodward Depo., p.34-35, attached hereto as Exhibit 4.

### (iv) Bland

Bland testified during her deposition that she purchased tickets to the golf tournament. Bland Depo., p.43, attached hereto as Exhibit 5.

### (v) Sandhofer

Sandhofer testified during his deposition that he secured "funds, donations, and stuff, for the golf tournament." He attended debates. He attended a reception for Sheriff Roberts at the mayor's house. He agreed to find places for Sheriff Roberts' signs at downtown businesses. Further, he agreed to work the polls. Sandhofer Depo., pp. 25, 28, 40-42, and 65 attached as Exhibit 6.

Accordingly, there is no evidence upon which a reasonable fact finder could conclude that the plaintiffs' lack of participation in Sheriff Roberts' campaign, or, conversely, their alleged support of Adams, were factors in their termination. Therefore, Sheriff Roberts is entitled to summary judgment.

### C. Sheriff Roberts is Entitled to Qualified Immunity

In an effort to thwart summary judgment, plaintiffs blatantly ignore the procedural history of the case and the clearly established law of qualified immunity.

Here, Sheriff Roberts filed a Motion for Leave to Amend Answer and Affirmative Defenses ("Motion to Amend") (ECF No. 18) on November 4, 2011, attaching an Amended Answer and Affirmative Defenses. By Order entered December 6, 2011, the Court granted the Motion to Amend (ECF No. 24), holding:

> The Motion for Leave to Amend Answer and Affirmative Defenses (ECF No. 18) is GRANTED. The Clerk is DIRECTED to file the defendant's Amended Answer and Affirmative Defenses, a signed copy of which is attached as Exhibit 1 to the defendant's motion (ECF No. 18 attach. 1).

Accordingly, Sheriff Roberts did include the defense of qualified immunity as an affirmative defense in this case.

Sheriff Roberts is entitled to qualified immunity. The plaintiffs merely claim that Sheriff Roberts "understood firing employees because of political affiliation or political speech was unlawful," somehow controls the qualified immunity analysis. Plaintiffs are wrong. This is not the issue. The issue is whether the Sheriff would have known from established Fourth Circuit case law that his actions were unlawful.

As detailed above, Sheriff Roberts has demonstrated that he is not liable for any violation of the First Amendment. To the extent that the Court finds evidence sufficient to conclude that Sheriff Roberts arguable violated the constitution, plaintiffs have failed to, and cannot, meet their burden to show that the law was sufficiently clearly established. It is not clearly established that political allegiance was an inappropriate requirement for sworn deputy sheriffs with arrest powers, law enforcement training, precluding Sheriff Roberts from terminating plaintiffs Carter,

Dixon, Sandhofer, and McCoy. It is not clearly established that plaintiffs Woodward and Bland, privy to confidential personnel and financial information, were entitled to the *Elrod-Branti* protections. Nor can plaintiffs point to clearly established law that would have put Sheriff Roberts on notice that any of his specific conduct in this case violated the law. As such, Sheriff Roberts is entitled to qualified immunity.

## II. CONCLUSION

For these reasons and those set forth in his Memorandum of Law in Support of Motion for Summary Judgment, defendant B.J. Roberts respectfully requests this Court to grant summary judgment in his favor and to dismiss plaintiffs' claims, with prejudice.

> B. J. ROBERTS, SHERIFF, Individually
> and in his official capacity as Sheriff
> of the City of Hampton, Virginia
>
> By: _____/s/_____
> Of Counsel

Jeff W. Rosen, Esquire
Virginia Bar No. 22689
*Attorney for B. J. Roberts, Sheriff, Individually and*
*in his official capacity as Sheriff of the City of*
*Hampton, Virginia*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia 23462
Phone: (757) 490-6253
Fax: (757) 497-1914
Email: jrosen@pendercoward.com

Lisa Ehrich, Esquire
Virginia Bar No. 32205
*Attorney for B. J. Roberts, Sheriff, Individually and in his official capacity as Sheriff of the City of Hampton, Virginia*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia  23462
Phone:  (757) 490-6253
Fax:  (757) 497-1914
Email:  lehrich@pendercoward.com

Jeffrey A. Hunn, Esquire
Virginia Bar # 45487
*Attorney for Sheriff B.J. Roberts*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia  23462
(757) 490-6253
(757) 497-1914
jhunn@pendercoward.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2011, I electronically filed a *Reply to Plaintiffs Opposition to Defendants Motion for Summary Judgment* with the clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>James H. Shoemaker, Jr., Esq.
>Virginia Bar #33148
>Jason E. Messersmith, Esq.
>Virginia Bar #77075
>Patton, Wornom, Hatten & Diamonstein, L.C.
>12350 Jefferson Avenue, Suite 300
>Newport News, VA  23602
>(757) 223-4580/Fax (757) 223-4518
>jshoemaker@pwhd.com
>jmessersmith@pwhd.com

William W. Hoyle, Jr., Esq.
Virginia Bar #21725
William W. Hoyle, Jr., P.C.
10401 Warwick Boulevard
Newport News, VA 23601
(757) 596-1850/Fax (757) 596-1925
habeas@erols.com
*Counsel for plaintiffs*

_____/s/_____
Jeff W. Rosen, Esquire
Virginia Bar No. 22689
*Attorney for B. J. Roberts, Sheriff, Individually and in his official capacity as Sheriff of the City of Hampton, Virginia*
Pender & Coward
222 Central Park Avenue
Virginia Beach, Virginia 23462
Phone: (757) 490-6253
Fax: (757) 497-1914
Email: jrosen@pendercoward.com

P:\DOCS\06750\49332\EW5242.DOC