IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

APR 2 4 2012

CLERK, U.S. DISTRICT COURT

BOBBY BLAND, DANIEL RAY CARTER, JR.,
DAVID W. DIXON, ROBERT W. MCCOY,
JOHN C. SANDHOFER, and DEBRA H.
WOODWARD

      **Plaintiffs,**

      **v.**

B.J. ROBERTS, individually and in his official
capacity as Sheriff of the City of Hampton,
Virginia.

      **Defendant.**

      **CIVIL ACTION NO. 4:11cv45**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant B.J. Roberts' Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. On January 23, 2012, this Court issued an Order granting Defendant's Motion for Summary Judgment. In that Order, the Court informed the parties that a Memorandum Opinion and Order detailing its rationale for the ruling would follow. Pursuant to that Order, the Court now issues this Memorandum Opinion and Order. For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED.**

### I. FACTUAL & PROCEDURAL HISTORY

Plaintiffs Bobby Bland, David Dixon, Robert McCoy, John Sandhofer, and Debra Woodward were employed in the Hampton Sheriff's Office ("the Office"). Plaintiffs Bland and Woodward were unsworn, non-uniformed civilian employees within the Office. Compl. ¶¶ 4, 9.

1

Plaintiffs Carter, Dixon, McCoy, and Sandhofer were all sworn, uniformed deputy sheriffs within the Office. Compl. ¶¶ 5-8. The Sheriff of the Office, B.J. Roberts ("the Sheriff"), was slated for re-election in November 2009. Compl. ¶ 12. The Plaintiffs claim that during his tenure the Sheriff used his authority to bolster his reelection efforts, including using employees to manage his political activities, using prisoners to set up campaign events and forcing his employees to sell and buy tickets to campaign fundraisers. Compl. ¶ 15. Plaintiffs contend that in late 2009, the Sheriff learned that a number of his employees were actively supporting Jim Adams, one of the Sheriff's opponents in the election. Compl. ¶ 17. Jim Adams was a former Lieutenant Colonel in the Sheriff's department and he knew each of the six Plaintiffs in this action. Compl. ¶ 17.

The Plaintiffs further allege that the Sheriff learned that each of them affirmatively expressed their support for Adams by informing other individuals of their support, attending a cookout which Adams also attended and "liking" Adams' Facebook page. Compl. ¶¶ 18(a)-(d). According to the Plaintiffs, after learning of their support of his opponent, the Sheriff called a meeting in which he informed his employees that they should get on the "long train" with him rather than riding the "short train" with his opponent. Compl. ¶ 22.

The Sheriff won the November 2009 election, and he decided not to retain the six Plaintiffs as well as six other employees. Compl. ¶ 26; *see also* Decl. Sheriff B.J. Roberts ¶ 10 ("Decl. Roberts"). The Sheriff claims he did not reappoint three civilian employees (including Plaintiffs Bland and Woodward) based on a reduction in the number of sworn deputies which the Compensation Board allocated to him. Decl. Roberts ¶ 11. He contends that he wanted to replace the civilian employees with sworn deputies. Def's Mem. Supp. Mot. Summ. J. ¶ 16. The Sheriff also declined to retain the remaining four deputy Plaintiffs and five other deputies for

2

unsatisfactory work performance or for his belief that their actions "hindered the harmony and efficiency of the Office." *Id.*

On March 4, 2011, the Plaintiffs filed suit in this Court against the Sheriff in his individual and official capacities alleging that he violated their First Amendment rights to freedom of speech and freedom of association when he fired them. On December 9, 2011, Defendant moved for summary judgment based on the following arguments: (1) that the Plaintiffs have not adequately alleged protected speech under the Constitution, (2) that, even if their speech was protected, Plaintiffs have failed to raise a genuine dispute as to a material fact regarding their retaliation claim, (3) that the Plaintiffs also have failed to create a triable issue with respect to their political association claim, (4) that the Sheriff is entitled to qualified immunity in his individual capacity, and (5) that the Sheriff is entitled to sovereign immunity in his official capacity.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also McKinney v. Bd of Trustees of Md. Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the fact is not necessary to clarify the application of the law.") (citations omitted). In deciding a motion for summary judgment, the court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586-87 (internal quotations omitted). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *abrogated on other grounds by*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## III. DISCUSSION

### A. Freedom of Speech Retaliation Claim

Plaintiffs first allege that the Sheriff failed to reappoint them in retaliation for their exercise of their right to freedom of speech when they choose to support the Sheriff's opponent in the election. Compl. ¶ 32. In order to prove that an adverse employment action violated their First Amendment right to freedom of speech, the Plaintiffs must satisfy the three-prong test the United States Court of Appeals for the Fourth Circuit ("the Fourth Circuit") laid out in *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998):

> Thus, to determine whether a public employee has stated a claim under the First Amendment for retaliatory discharge, we must determine (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a personal matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.

*Id.* at 277-78.

4

The first prong of the *McVey* test necessarily requires that speech exists before an evaluation of the remaining prongs can occur. Plaintiffs Carter, McCoy, and Woodward have not sufficiently alleged that they engaged in expressive speech, and Plaintiff Dixon has not proven that his alleged speech touched upon a matter of public concern. Therefore, these Plaintiffs' claims fail as a matter of law.[1]

### a. *Daniel Ray Carter, Jr. & Robert McCoy*

Carter and McCoy each allege that they engaged in constitutionally protected speech when they "made statements" on Adams' Facebook page. Pls.' Mem. Opp'n Summ. J. at 9. McCoy's Facebook activity is more nebulous than Carter's. McCoy claims that he posted a message on Adams' Facebook page which he later took down. Decl. Robert W. McCoy ¶ 10 (Dec. 21, 2011). The Court, however, is unaware of the content of this message. McCoy's barebones assertion that he made some statement at some time is insufficient evidence for the Court to adequately evaluate his claim. Without more, the Court will not speculate as to what McCoy's actual statement might have been. McCoy has not sufficiently alleged any constitutionally protected speech.

Carter alleged that he sent a statement of support and attached the statement as an exhibit to his declaration in this case. Decl. Daniel R. Carter, Jr. ¶ 11 (Dec. 22, 2011). However, after reviewing the record, the Court has not found any evidence of the "statement of support" Carter allegedly made. In fact, the only evidence regarding Carter's activity on Adams' Facebook page is that he "liked" Adams' page.

It is clear, based on the Sheriff's own admissions, that at some point he became aware of McCoy and Carter's presence on Adams' Facebook page. B.J. Roberts Dep. at 104:4-8; 105:16-20

---

[1] Plaintiffs concede that the First Amendment retaliation claims are only being asserted by Plaintiffs Carter, Dixon, McCoy, and Woodward. Therefore, the Court will not address Plaintiffs Sandhofer and Bland in this claim. *See* Pls.' Mem Law Opp'n Def.'s Mot. Summ. J. at 2.

(Oct. 4, 2011) ("Roberts Dep."). However, the Sheriff's knowledge of the posts only becomes relevant if the Court finds the activity of liking a Facebook page to be constitutionally protected. It is the Court's conclusion that merely "liking" a Facebook page is insufficient speech to merit constitutional protection. In cases where courts have found that constitutional speech protections extended to Facebook posts, actual statements existed within the record. For example, in *Mattingly v. Milligan*, Mattingly posted on her Facebook wall referring directly to the firing of various employees. No. 4:11CV00215, 2011 WL 5184283, at *2-*3 (E.D. Ark. Nov. 1, 2011) ("Two minutes after this post, Mattingly posted another comment: 'I am trying [sic] my heart goes out to the ladies in my office that were told by letter they were no longer needed . . . It's sad.' "). There, the court held that Mattingly's specific post was an expression of constitutionally protected speech. *Id.* at *3-*4. Similarly, in *Gresham v. City of Atlanta*, the plaintiff posted: "Who would like to hear the story of how I arrested a forgery perp at Best Buy online to find out later at the precinct that he was the nephew of an Atlanta Police Investigator . . . ?" No. 1:10-CV-1301-RWS-ECS, 2011 WL 4601022, at *2 (N.D. Ga. Aug. 29, 2011), *report and recommendation adopted in part, rejected in part on other grounds by*, No. 1:10-CV-1301 RWS, 2011 WL 4601020 (N.D. Ga. Sep. 30, 2011). In *Gresham*, the district court adopted the Magistrate Judge's recommendation that although the statement was a close question, it constituted enough speech to be considered speaking out as a matter of public concern. *See* 2011 WL 4601022 at *2.

　　These illustrative cases differ markedly from the case at hand in one crucial way: Both *Gresham* and *Mattingly* involved actual statements. No such statements exist in this case. Simply liking a Facebook page is insufficient. It is not the kind of substantive statement that has previously warranted constitutional protection. The Court will not attempt to infer the actual

content of Carter's posts from one click of a button on Adams' Facebook page. For the Court to assume that the Plaintiffs made some specific statement without evidence of such statements is improper. Facebook posts *can* be considered matters of public concern; however, the Court does not believe Plaintiffs Carter and McCoy have alleged sufficient speech to garner First Amendment protection.

### b. *David Dixon*

Dixon attempted to keep his political opinions a secret. David Dixon Dep. at 31:16-17 (Aug. 22, 2011) ("Dixon Dep.") ("A. Around the office, I tried to keep it a quiet as I could, yes sir."). Having not alleged any specific speech, Dixon claims that he had a bumper sticker on his car, and that he was "pretty sure" others saw it. *Id.* at 13-15. If the Court had evidence that the Sheriff was aware of the presence of the bumper sticker supporting Adams, then Dixon might have sufficiently alleged constitutionally protected speech. Counsel for the Plaintiffs had opportunities to inquire about others' knowledge of the bumper sticker on Dixon's car. However, they failed to do so. There is insufficient evidence in the record to establish that the Sheriff or his high-ranking officials had knowledge of the bumper stickers.

The only other expression in which Dixon allegedly engaged was at the election booth. The Sheriff alleges that one of the reasons he terminated Dixon was for violating the Standards of Conduct when he used profanity towards a co-worker. *See* Def.'s Mem. Law Supp. Mot. Summ. J. at 9. The Sheriff alleges that "[w]hen Dixon exited the election booth, in referring to Sheriff Roberts' campaign literature, he told Frances Pope, 'you can take this f---ing s---, and throw it in the trash can.' " *Id.* Plaintiffs counter that Dixon never used profanity with Francis Pope and further suggest that this statement, regardless of whether it actually contained profanity, is

7

constitutionally protected speech. Pls. Opp'n Summ. J. at ¶ 13.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 148-49 (1983). Dixon's alleged use of profanity in speaking to Frances Pope is immaterial to the Court for the purposes of determining if his speech is protected. While Plaintiffs claim that Dixon's expression is protected, the Court finds that the expressive activity Dixon engaged in does not constitute speaking about a matter of public concern. "Because of the nature of the interest protected, however, public employee speech about matters of personal interest is not so protected. Thus, personal grievances, . . . , or expressions about other matters of personal interest do not constitute speech by the First Amendment." *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992). Further, ". . . to be a matter of public concern, speech must 'involve[] an issue of social, political, or other interest to a community.' " *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 592 (D. Md. 2010) (quoting *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007)).

There is no evidence that Dixon's statement touches on a matter of political concern to the community as a whole. It appears to the Court that he was airing a personal grievance about where he believed the literature belonged. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their officers, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick*, 461 U.S. at 146. Dixon did not seek to inform the public of anything. Nor did he attempt to bring to light any potential wrongdoing on the part of the Sheriff's office. Despite the fact that others may have heard Dixon's statement, it is not clear that

8

he intended to address it to any audience other than Frances Pope. Dixon's statement is devoid of any public concern. Based on the context, form, and content of Dixon's statement, he has not alleged protected speech. Therefore, he fails the first prong of the *McVey* test and cannot establish a retaliation claim against the Sheriff.

### c.  *Debra Woodward*

The crux of Woodward's claims is that because she did not do anything to actively support the Sheriff in 2009 (as she had in the past), he knew she was not supporting him in the upcoming election. *See* Debra Woodward Dep. at 12:12-24; 37:7-19 (Aug. 23, 2011) ("Woodward Dep."). Similar to Plaintiff Bland, Woodward admits that she never did anything to outwardly support Adams.[2] *Id.* at 6-9.

Mere belief that the Sheriff and high ranking officials in his office "surmised" or "believed" she was supporting Adams is insufficient. In *Smith v. Frye*, the plaintiff claimed that she was fired because her employer believed she supported her son's candidacy. 488 F.3d 263, 266 (4th Cir. 2007). The Fourth Circuit affirmed the district court's ruling that plaintiff's belief was not enough to establish speech because, aside from the speculative claims she made that her employer knew she supported her son's candidacy, the plaintiff had not spoken or expressed herself in any way. *Id.* at 267. Akin to many of her fellow Plaintiffs in this case, Woodward has not given the Court any reason other than speculation that the Sheriff knew she was supporting his opponent. The Plaintiffs would have the Court match their guesswork with its own and credit the Sheriff with knowledge of beliefs which the Plaintiffs never actively expressed. The Plaintiffs'

---

[2] In a declaration dated December 23, 2011, Woodward claimed that she protested Lt. George Perkins circulating a petition for Sheriff Roberts. Decl. Debra Woodward ¶ 7-8. Plaintiff Woodward never mentioned this "protest" during her deposition. She further stated that she "*believed* [her] colleagues viewed [her] protests as opposition to the Sheriff or support for Adams." *Id.* at ¶ 10 (emphasis added). Notwithstanding the fact that the Court may not judge the factual credibility of Woodward's statements at this stage of the litigation, it still finds that she has not provided the Court with any evidence beyond mere speculation that the Sheriff was aware of this protest.

claims appear riddled with speculation, and the Court simply will not engage in such conjecture. Accordingly, Plaintiff Woodward's claim of retaliation must fail.

**B. Freedom of Association Claim**

In addition to their First Amendment retaliation claims, the Plaintiffs also have asserted that the Sheriff violated their First Amendment right to freedom of association. A public employee may not generally be terminated for his or her political affiliation. *Elrod v. Burns*, 427 U.S. 347, 358-59 (1976); *see also Branti v. Finkel*, 445 U.S. 507, 509-10 (1980). "The First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64-65 (1990).

The Fourth Circuit has adopted a two-part formulation of the *Elrod-Branti* test. First, the court must "examin[e] whether the position at issue, no matter how policy-influen[tial] or confidential it may be, relates to 'partisan political interests . . . or concerns.' " *Stott v. Haworth*, 916 F.2d 134, 141 (4th Cir. 1990) (internal citation omitted). If so, the court must then "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holders whose function is such that party affiliation is an equally appropriate requirement." *Id.* at 142.

> In the Fourth Circuit, *Elrod* cases have fallen into two primary categories: (1) cases in which the person terminated is actively associated with a political party (or actively chooses not to be so associated) and the individual making the firing decision is a person seeking office; or (2) cases in which newly elected or appointed officials fire supporters of their rivals during a political transition."

*Fields v. Cnty. of Beaufort*, 699 F. Supp. 2d 756, 763 (D.S.C. 2010). The case at hand aligns more

closely with the second category of cases. Although the Sheriff had held his position for quite some time, he was still "newly elected" because he won the 2009 election prior to discharging the six Plaintiffs (among others).

Similar to their retaliation claims, the Plaintiffs have offered little evidence which the Court views as more than mere speculation about their "association" with Adams campaign. As previously mentioned, the Plaintiffs frequently explained in their deposition testimony how they attempted to keep their alleged support for Adams secret. In fact, aside from the Sheriff's admission that he knew Carter and McCoy at some point had been on Adams' Facebook page, there is little to no evidence that rises to the level of a genuine dispute about whether the Sheriff actually knew about the Plaintiffs' support of Adams. Consequently, the Court believes that the freedom of association claim suffers from identical difficulties to the Plaintiffs' retaliation claims. Still, the Plaintiffs may argue that there was a perception within the Sheriffs' office that they supported Adams. While the Court maintains that there is insufficient evidence as a matter of law to support even a claim based on perceptions, all of Plaintiffs' claims against the Sheriff will fail because he is entitled to both qualified and Eleventh Amendment Immunity.

## C. Qualified Immunity[3]

"Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Fields*, 699 F. Supp. 2d at 760 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials lose the protection of the immunity only if it appears that (1) they violated a

---

[3] Plaintiffs contend that Defendant waived the defense of qualified immunity by virtue of his failure to plead it in his Answer to the Complaint. However, on December 6, 2011, the Court granted Defendant's Motion to Amend his Answer and Affirmative Defenses. In his amended pleading, the Sheriff raised the defense of qualified immunity. The Court, therefore, will consider this defense.

statutory or constitutional right of the plaintiff, and (2) the right was "clearly established" at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right." *McVey*, 157 F.3d at 276. "Only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected." *Id.* at 277 (internal citations omitted).

The first question the Court must answer is whether the Plaintiff has established a deprivation of a constitutional right. The Court has previously elucidated its opinion that neither Plaintiffs' retaliation claim nor their association claim sufficiently establishes a deprivation of their constitutional rights. This finding ends the inquiry. The Defendant is entitled to qualified immunity.

However, assuming *arguendo* that the Sheriff violated the Plaintiffs' statutory or constitutional rights, those rights were not clearly established in the context of this case. In other words, even if the Sheriff violated the Plaintiffs' constitutional rights, those rights were not clearly established. "The area of discharge for the exercise of First Amendment rights whether of free speech or political association, is one of the most complex that we have to apply." *Fields*, 699 F. Supp. 2d at 764. Moreover, courts have inconsistently used the First Amendment to allow for dismissals of some employees but not others. *Id.* "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Plaintiffs contend that the Sheriff is not entitled to qualified immunity because he testified in his deposition that he understood firing employees for their speech or political affiliations was not a right he possessed. *See* Pls.' Opp'n Summ. J. 32.

> Q. So you believe that you have the right to terminate them for any reason,

12

including political opposition to you?

A. No.

Q. You don't believe that?

A. No, I don't believe that I have the right to – I know I have the right to terminate their employment at will, but I'd have to have a cause for at will.

Q. Okay. But in any event, it's your understanding that you don't have the right to end a nonsupervisory employee's employment at will for political opposition to you?

MR. ROSEN: Okay. I object to the form to the extent it calls for a legal conclusion or an interpretation of law. You can answer it if you can.

A. The answer to that would be no.

Roberts Dep. at 112:17-25; 113:1-9. Simply because an employer knows his employees have the right to oppose him politically does not create the inference that an objectively reasonable elected official in his position would fully understand the contours of his employees' rights. Nor does it mean that he should understand the complexity of the legal questions involved in this case: "When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues." *McVey*, 157 F.3d at 277. Plaintiffs' counsel's questioning of the Sheriff barely touches the convoluted arena of the law in which the Sheriffs and his discharged employees have opposed one another. When the Sheriff answered "no" to the question of whether he could fire an employee for political opposition, what his answer actually shows is that he fails to understand the complexity of this area of the law because there are certain instances where a government employer can demand the loyalty of his employees.

Two of the Plaintiffs (Bland and Woodward) arguably represented the Sheriff to the public. "[A] public employee, who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence enjoys substantially less First Amendment protection than does a lower level

employee." *Id.* at 278. Woodward admitted herself that she served as the Sheriff's "liaison to the Hampton Roads criminal justice [sic] – or the training academy . . . ." Woodward Dep. at 11:22-25. She also coordinated all the training for the Sheriff's Department. *Id.* ("I scheduled all the training, coordinated it. I had to keep track of all of the training records of each employee to make sure that they received all of their annual training to meet all of the accreditation.). Bland served as Finance Officer for the Sheriff's Office. Dep. Bobby Bland at 22:12-16 (Aug. 22, 2011) ("Bland Dep."). It was part of Bland's job description to serve as "liaison between the Hampton Sheriff's Office and the City Finance Department (procurement and Accounts Payable)" as well as being the "point of contact for all vendors to facilitate the timely payment of invoices." *See* Hampton Sheriff's Office Job Description: Finance Officer/Procurement & Accounts Payable, Ex. 27-19.

Moreover, four of the Plaintiffs (Carter, Dixon, McCoy, and Sandhofer) were sworn deputies within the Hampton Sheriff's Office. The Fourth Circuit, in *Jenkins v. Medford*, held that political allegiance to the Sheriff was a lawful job requirement for deputies. 119 F.3d 1156, 1164 (4th Cir. 1997). Three years later, in *Knight v. Vernon*, the Fourth Circuit explained that the central rationale behind the *Jenkins* holding is that "the specific duties of the public employee's position govern whether political allegiance to her employer is an appropriate job requirement." *Knight v. Vernon*, 214 F.3d 544, 549 (4th Cir. 2000). The *Knight* court found that jailors with limited duties who lacked the power to arrest were not engaged in law enforcement activity on behalf of the Sheriff. *Id.* Using the required individualized inquiry, the facts of *Knight* are different from the facts of this case. Unlike the Sheriff's deputies, the jailer in the *Knight* case never took the oath of office of a deputy sheriff. *Id.* at 546 ("As a jailer, Ms. Knight did not take

14

an oath of office like a deputy sheriff, who is a sworn law enforcement officer).[4] The officers in

this case were sworn, uniformed deputies. Under Virginia law, deputies have the power of arrest.[5]

The very broad proposition that employees cannot be fired for their political opposition

does exist. However, given the knowledge which an objective Sheriff would have had at the time,

coupled with the lack of clarity under which courts have decided these issues, the Plaintiffs' rights

cannot be said to be clearly established. The Court cannot find that the Sheriff "transgressed

bright lines". *Maciariello*, 973 F.2d at 298. Firstly, it is not clear that the Plaintiffs ever spoke

out in a meaningful way so as to merit First Amendment protections. Secondly, there is

insufficient evidence to establish that the Sheriff was aware of their purported affiliation with

Adams. Thirdly, even if the Sheriff fired the Plaintiffs for political reasons, there is a multitude of

Fourth Circuit case law which may have justified his decision regarding sworn deputies and other

officers who represented him to the public or had access to confidential information.

Based on the facts that an objectively reasonable officer would have had at the time, the

Court cannot conclude that the rights were "clearly established" such that an objectively

reasonable person would know them. The First Amendment balancing tests are difficult to apply

"without having to engage in guesswork." *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002).

Further, ". . . the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult

to apply, and not yet well defined." *Id.* (quoting *Dimeglio v. Haines*, 45 F.3d 790, 806 (4th Cir.

1995)). In a case where the Plaintiffs have asked the Court itself to engage in extensive

guesswork, an objectively reasonable official in the Sheriff's position cannot be expected to

---

[4] The Court bases its finding that the Plaintiffs failed to make out a claim for political association largely on the insufficient evidence proving that their association was ever actually expressed. The Court did not reach the issue of arrest powers when discussing the freedom of association claim because the Plaintiffs have not laid the groundwork necessary for the Court to tackle that portion of the analysis.
[5] "A. The following officers shall have the powers of arrest as provided in this section: . . . 2. Sheriffs of the various counties and cities, and their deputies;. . . . Va. Code. Ann. § 19.2-81.

engage in that same calculus. A balancing which has been difficult for multiple courts to engage is difficult more so for a Sheriff attempting to ensure that his actions do not impede upon the constitutional rights of his employees. Taking the facts in the light most favorable to the Plaintiffs, Sheriff Roberts is entitled to qualified immunity.

### D. Eleventh Amendment Immunity

Finally, the Sheriff asserts that he cannot be sued in his official capacity because he is a constitutional officer of the Commonwealth. Plaintiffs, in their response to Defendant's Motion for Summary Judgment, failed to address the issue of Eleventh Amendment Immunity. Defendant argues that a suit against a constitutional officer is considered a suit against the state, which the Eleventh Amendment to the Constitution bars. "In order to determine whether a suit against a state agency is in reality a suit against the state, the court 'must examine the particular entity in question and its powers and characteristics as created by state law.' " *Hussein v. Miller*, 232 F. Supp. 2d 653, 656 (E.D. Va. 2002) (quoting *Collin v. Rector and Bd. of Visitors of Univ. of Va.*, 873 F. Supp. 1008, 1013 (W.D. Va. 1995) (internal citation omitted)). Moreover, when "the State treasury will be called upon to pay a judgment against a governmental entity, then Eleventh Amendment immunity applies to that entity, and consideration of any other factor [affecting whether an entity is an arm of the state] becomes unnecessary." *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 223 (4th Cir. 2001).

In the Commonwealth of Virginia, sheriffs are constitutional officers. *See* Va. Const. Art. VII § 4 ("There shall be elected by the qualified voters of each county and city a treasurer, a sheriff, an attorney for the Commonwealth, a clerk, . . . , and a commissioner of revenue."); Va. Code Ann. § 15.2-1609; *Brown v. Brown*, No. 7:99-00275, 2000 U.S. Dist. LEXIS 21002, at *5

16

(W.D. Va. Feb. 22, 2000), *rev'd and remanded on other grounds, Brown v. Wiita*, 248 F.3d 1133

(4th Cir. 2001); *see also Harris v. Hayter*, 970 F. Supp. 500 (W.D. Va. 1997); *Blankenship v.*

*Warren Cnty.*, 918 F. Supp. 970, 974, *on recons.*, 931 F. Supp. 447, 449 (W.D. Va. 1996); *McCoy*

*v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992).  It is well-settled in this

Commonwealth that Sheriffs and Sheriff Departments are "arms of the Commonwealth of

Virginia." *Blankenship*, 918 F. Supp. at 974.

      Because the Sheriff is a constitutional officer, the State would be liable to pay adverse

judgments won against the Sheriff in his official capacity.[6]  In other words, a suit against the

Sheriff in his official capacity is in fact a suit against the State.  Unless the State has abrogated or

waived immunity, Eleventh Amendment protection applies. *See Harris*, 970 F. Supp. at 502.

There is no evidence of abrogation or consent to suit in this case.  Consequently, the Sheriff is

immune from suit for claims against him in that capacity.  Therefore, even if the Court found that

Plaintiffs had adequately stated First Amendment claims, the Sheriff, in his official capacity,

would still be immune from liability.

---

[6] During the deposition of the Sheriff, counsel for the Plaintiffs inquired as to what entity would be responsible for any judgment in this case. Roberts Dep., 54:14.  The Sheriff informed counsel that Virginia Risk Management would handle any such judgments. *Id.* at 54: 14-18 (Q: Sir, are you covered by a policy of insurance in this case? A. Yes.  Q. And what insurance is that? A. Virginia Risk Management.).  Upon Plaintiffs' counsel's further inquiries, the Sheriff explained that, based on his knowledge, the State (of Virginia) is the only insurance provider for his office. *Id.* at 56:23-25; 57:1-2 (Q. Couple more questions about the insurance issue.  Is there a private insurance company involved in your insurance coverage, or is it just a state policy? A. State.).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

Plaintiffs' claims are hereby **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
April 24, 2012

18